# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JUSTIN ALAN BURTON,**

        **Plaintiff,**

v.                                                    **Civil Action No. 1:10cv48**
                                                                           **(Judge Keeley)**

**CHRIS TYLER, MIKE HILL,
WILLIAM YURCINA, DENNIS
FOREMAN AND JOE MANCHIN,**

        **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

### I. Procedural History

On March 25, 2010, the *pro se* plaintiff initiated this case by filing a civil rights complaint against the above-named defendants. [Dckt. 1] On March 30, 2010, the plaintiff was granted permission to proceed as a pauper and assessed an initial partial filing fee of $25.91. [Dckt. 10] The plaintiff paid his initial partial fee on April 16, 2010. [Dckt. 12] Consequently, on April 20, 2010, the undersigned conducted a preliminary review of the file, determined that summary dismissal of the complaint was not warranted at that time, and directed defendants Tyler, Hill, Yurcina and Foreman to file an answer. [Dckt. 13] Governor Manchin was not served or directed to answer the complaint as he is clearly not an appropriate defendant in this case. *Id.* at n. 1.

On May 18, 2010, the defendants filed a consolidated Motion to Dismiss and Memorandum in Support. [Dckt. 28 & 29] Because the plaintiff is proceeding without counsel in this case, a Roseboro Notice was issued on May 19, 2010, advising the plaintiff of his right to file a response

to the defendants' motion. [Dckt. 30] The plaintiff filed his response on June 14, 2010 [Dckt. 33] and the defendants filed a reply on June 22, 2010 [Dckt. 34].

This case is before the undersigned for a Report and Recommendation on the complaint, the defendants' motion and the parties' subsequent response and reply.

## II. Contentions of the Parties

### A. The Complaint

In the complaint, the plaintiff asserts that he became eligible for parole consideration on May 1, 2009.[1] [Dckt. 1 at 4] At that time, he prepared a home plan in preparation for his parole hearing. *Id.* The West Virginia Parole Board met at the Northern Correctional Center on July 7, 2009, but the plaintiff did not receive a parole hearing at that time. *Id.* On August 3, 2009, an incident occurred between the plaintiff and his case manager, Chris Tyler ("Tyler"). *Id.* At or about the time of that incident, the plaintiff advised Tyler that he was scheduled to see the parole board the next day, August 4, 2009. *Id.* Tyler allegedly told the plaintiff: "We will see about you seeing the Parole Board tomorrow." *Id.*

Later that night, the plaintiff filed a grievance with Lt. Mike Hill ("Hill") concerning the incident between himself and Tyler. *Id.* In addition, Tyler called the parole board and informed them that the plaintiff had received a write-up that day. *Id.*

On August 4, 2009, the plaintiff was taken to the visitation/multi-purpose room where he was informed by Tyler that he would not be seeing the parole board that day as scheduled. *Id.* Also that day, Hill signed the incident report that Tyler had written on the plaintiff regarding the August 3rd

---

[1] The complaint does not specify the year in which the events complained of took place. The year was obtained from the defendants' pleadings.

incident. *Id.*

That same day, the plaintiff filed additional grievances with Hill regarding the incident between him and Tyler. *Id.* The next day, August 5, 2009, the plaintiff filed another grievance about how the August 3rd incident was handled. *Id.* In response to the plaintiff's complaint, he was taken to an interview room where he met with Hill to discuss the situation. *Id.* at 5. On that same date, he also filed an action against Tyler in state court under 42 U.S.C. § 1983 and a habeas corpus action in state court against Tyler and William Yurcina "(Yurcina"), the facility's Administrator. *Id.* The plaintiff also received a response informing him that the decision to cancel his parole hearing was made by the parole board and not facility staff. *Id.*

On August 14, 2009, the plaintiff wrote a letter to the Commissioner of the West Virginia Division of Corrections, Jim Rubenstein ("Rubenstein"). *Id.* In that letter, the plaintiff complained of the events of August 3rd and later. *Id.* He continued to file more grievances and more letters about the August 3rd incident throughout the month of August 2009. *Id.* at 5-6. In particular, the plaintiff wrote letters to Dennis Foreman ("Foreman"), the Chairman of the West Virginia Parole Board, and Joe Manchin ("Manchin" or "Governor Manchin"), the Governor of West Virginia. *Id.*

On August 17, 2009, the plaintiff filed a second habeas corpus action in the state court. *Id.* at 6.

The next day, he received a copy of the violation report for the incident which occurred on August 3rd. *Id.* The violation report charged the plaintiff with a violation of code 2.32, insubordination/insolence. *Id.* A hearing on the charge was held on August 24, 2009. Id. The plaintiff received a five-day referral.[2] *Id.* On August 25, 2009, the plaintiff received the results of

---

[2]The plaintiff does not explain what a five-day referral is.

his disciplinary hearing -- 30 days loss of privileges and transfer to a more secure facility.³ *Id.* The plaintiff appealed the disposition of his disciplinary proceedings that same day by handing the appeal to Hill, for submission to Yurcina. *Id.*

On August 26, 2009, the plaintiff was transferred to St. Mary's Correctional Center. *Id.*

On August 27, 2009, the plaintiff received a letter from Foreman informing him that his parole hearing was rescheduled for December 2009. *Id.* at 7.

On August 29, 2009, the plaintiff spoke with the institutional parole officer at St. Mary's. *Id.* The plaintiff was allegedly informed that the procedure used in his case was incorrect. *Id.* The plaintiff does not, however, explain how the procedure was incorrect.

On September 8, 2009, the plaintiff sent letters to Rubenstein and Governor Manchin about his unanswered grievances and complaints of harassment. *Id.* That same day, he filed a harassment suit in state court against Tyler and Yurcina. *Id.* In the month of September, the plaintiff also wrote letters and grievances to various state officials about the August 3rd incident, renewing his home plan and other matters. *Id.* During that month, the plaintiff also received responses to several of his grievances and to his disciplinary appeal. *Id.* at 8.

As to the individual defendants, the plaintiff asserts that each defendant is liable to him for damages for the following reasons:

(1) Chris Tyler - for calling the parole board on August 3, 2009, and informing it that the plaintiff had a write-up, which was not true. The write-up was not issued until several days later. The plaintiff asserts that Tyler's false statements to the parole caused his parole hearing to be cancelled and delayed.

---

³Presumably then, the plaintiff was found guilty of the charge.

4

(2) Mike Hill - for being aware that Tyler called the parole board before the write-up was actually issued and supporting Tyler's actions.

(3) William Yurcina - for being aware of the incident shortly after it occurred and not intervening as he should have.

(4) Dennis Foreman - for approving the plaintiff's removal from the August parole list.

(5) Governor Joe Manchin - for ignoring the plaintiff's letters.

Id. at 9.

As relief, the plaintiff seeks nominal, punitive and compensatory damages, as well as, injunctive relief against the defendants. *Id.* at 12. The plaintiff specifically seeks damages for the deprivation of privileges, mental anguish, "injury of quality of life" and for reimbursement of all legal fees. *Id.*

**B.  The Defendants' Motion**

In their motion, defendants Tyler, Hill, Yurcina and Foreman assert that the plaintiff's complaint should be dismissed for the following reasons:

(1) the plaintiff has failed to state a claim for which relief may be granted against Tyler;

(2) the plaintiff's claim is barred by the doctrine of *res judicata* and collateral estoppel;

(3) the plaintiff has failed to state a claim for which relief may be granted against Hill, Yurcina or Foreman;

(4) the plaintiff's complaint is moot;

(5) the defendants are entitled to qualified immunity; and

(6) the plaintiff has failed to establish jurisdiction.

See [Dckt. 28 & 29 at 3-12]

## C. The Plaintiff's Response

In response to the defendants' motion, the plaintiff contends that the defendants do not dispute the facts underlying his claim. [Dckt. 33 at 1] Moreover, he notes that the disciplinary write-up was later reversed and expunged from his record. *Id.* He also contends that he has stated claims against each and every defendant with the exception of Governor Manchin and that the relief requested is more than reasonable. *Id.* Specifically, the plaintiff asserts that the defendants "conspired against him, manipulated state officials, ignored their own policies and procedures" and the state code. *Id.*

As to Tyler, the plaintiff asserts that Tyler violated his constitutional rights of due process and equal protection by calling the parole board and informing it that the plaintiff had been charged with a write-up, knowing that such statement was false. *Id.* at 1-2. As to Hill, the plaintiff asserts that Hill violated his constitutional rights of due process and equal protection by failing to take any action when he was informed of the events of August 3, 2009. *Id.* at 2. As to Yurcina, the plaintiff asserts that Yurcina violated his constitutional rights of due process, equal protection and the prohibition against cruel and unusual punishment when he failed to "step into" the situation after being informed of it. *Id.* As to all three of these defendants, the plaintiff asserts that these three defendants engaged in a conspiracy to have the plaintiff removed from parole consideration on August 4, 2009. *Id.* As to Foreman, the plaintiff asserts that Foreman violated his constitutional rights to due process and equal protection by failing to follow the pertinent state codes in cancelling the plaintiff's August 2009 parole consideration hearing. *Id.* at 3.

The plaintiff also asserts that he did not receive a parole consideration hearing on November 12, 2009, as alleged by the defendants in their motion. *Id.* Instead, the plaintiff asserts that he

merely met with his institutional parole officer on that date and was informed that his home plan had not been approved. *Id.*

Moreover, the plaintiff asserts that his case is about much more than the fact that Tyler called the parole board and lied to it about a write-up. *Id.* at 4. The plaintiff asserts that his complaint is about how this was done. *Id.* The plaintiff asserts that Tyler lied to and manipulated the parole board into cancelling his parole hearing. *Id.* The plaintiff asserts that Tyler's actions were vengeful and malicious. *Id.*

Next, the plaintiff asserts that his complaint is not barred by the doctrine of *res judicata* and collateral estoppel. *Id.* He asserts that his prior complaints in state court were habeas corpus actions that were dismissed, not constitutional civil rights claims. *Id.* He further asserts that he has not received any order from the state court advising him that there has been a ruling on his cases and that he was unaware of any decisions being made until receiving a copy of the defendants' motion. *Id.*

The plaintiff also contends that his case is not moot because others could easily find themselves in a similar situation in the future. *Id.* at 5. In addition, he asserts that the case is not moot because he is still suffering the consequences of the defendants' actions. *Id.*

Last, the plaintiff argues that the defendants are not entitled to qualified immunity because he has established a clear violation of his constitutional rights that any correctional employee or parole board member should have been aware. *Id.* Accordingly, the plaintiff asks that the defendants' motion to dismiss be denied. *Id.* at 6.

**D.  The Defendants' Reply**

In their reply, the defendants assert that the plaintiff's "clarification" if his claims in his response to their motion brings forth additional reasons why the complaint should be dismissed.

[Dckt. 24] For instance, the defendants assert that Foreman is entitled to immunity from suit for acting in his official capacity as the Chairman of the West Virginia Parole Board. *Id.* at 1. Specifically, the defendants assert that Foreman is entitled to "*qui si*" judicial immunity from the plaintiff's claims. *Id.* Next, the defendants argue that the plaintiff's claims against Yurcina relate only to his acting in a supervisory capacity. *Id.* at 2. Thus, because liability under 42 U.S.C. § 1983 cannot be premised on *respondeat superior*, the plaintiff has failed to state a claim against Yurcina. *Id.* The defendants then argue that the same is true for the plaintiff's claims against Hill. *Id.* at 2-3.

As to defendant Tyler, the defendants assert that the plaintiff's only complaint is that he was not officially charged with, or found guilty of, insubordination at the time Tyler called the parole board. *Id.* at 3. The defendants assert, however, that the plaintiff's argument is flawed. *Id.* The defendants note that under the plaintiff's theory, an inmate could violate any rule and do as he pleases just prior to a scheduled parole hearing and be granted parole so long as he was not yet charged or found guilty of a violation before the actual parole hearing occurred. *Id.* The defendants assert that this would render inmates unaccountable for their actions just prior to a parole consideration hearing and is not logical nor can it be the intent of the applicable rules and regulations. *Id.* The defendants argue that maintaining a record of good conduct is a prerequisite for a parole eligibility hearing. *Id.* Therefore, when an inmate exhibits bad behavior just prior to a parole consideration hearing, such conduct is relevant to the hearing and should be reported, whether a formal charge has yet been written or not. *Id.* at 3-4. Thus, the defendants assert that Tyler's action in contacting the parole board about the petitioner's behavior was not improper under any rule or regulation, and that the plaintiff simply cannot establish that his constitutional rights were

violated by Tyler's actions.[4]  *Id.* at 4.

Next, the defendants assert that the plaintiff's harassment suit in state court was a civil rights action and not a habeas corpus action. *Id.* at 5. In addition, the defendants assert that the plaintiff's state court harassment suit contained the same underlying factual claims as the ones in this case and named substantially the same defendants. *Id.* Whether the plaintiff was aware of the outcome of that case is immaterial to whether the doctrine of *res judicata* and collateral estoppel apply. *Id.*

As to the issue of mootness, the defendants assert that whether the same could happen to other inmates is irrelevant in this case. *Id.* They also assert that the plaintiff's removal from the facility prevents any reasonable expectation that the alleged violation could recur. *Id.* at 6.

Last, the defendants note that the complaint contains no allegations of conspiracy. *Id.* Moreover, the defendants note that the plaintiff's conspiracy claims, even if properly pleaded, have not been sufficiently proved and are not actionable. *Id.* The defendants further note that even assuming all facts in favor of the plaintiff, he has not alleged a basis for a conspiracy claim. *Id.*

### III.    Standards of Review

**A.    Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the

---

[4]In making this argument, the defendants note that the plaintiff has never disputed that he was insubordinate or insolent with Tyler on August 3, 2009. [Dckt. 34 at 4] In fact, the defendants note that the plaintiff admits to calling Tyler a derogatory name and cursing at him. *Id.*

complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but "must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citations omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E. I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, adopted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order

to meet the plausibility standard and survive dismissal for failure to state a claim. *Id.*

B. <u>**Motion for Summary Judgment**</u>

When a motion to dismiss is accompanied by affidavits, exhibits and other documents, the motion will be construed as a motion for summary judgment. Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex</u> at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. <u>Id.</u> This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u> at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. *Id.* at 248. Summary

judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

### IV. Analysis

**A. Plaintiff's Due Process and Equal Protection Claims**

    **1. Defendants Manchin, Hill and Yurcina**

Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001) (internal citation omitted). Therefore, in order to establish liability under § 1983, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right under § 1983. Rizzo v. Good, 423 U.S. 362 (1976).

In this case, the plaintiff essentially complains that his constitutional rights of due process and equal protection were violated when his August 2009 parole consideration hearing was cancelled when allegedly false and inaccurate information was relayed to the parole board on the day before his scheduled hearing. The injury alleged by the plaintiff is the postponement of his parole hearing.

        a. Governor Manchin

The plaintiff alleges that Manchin, in his capacity as the Governor of the State of West Virginia, was involved in this alleged violation of the plaintiff's constitutional rights only to the extent that Governor Manchin allegedly failed to respond to the plaintiff's letters about the

incident. All of this occurred after the fact.

      b. <u>Mike Hill</u>

The plaintiff alleges that Hill, acting in his capacity as the Chief of Security at the Ohio County Correctional Center, was involved in this alleged violation of the plaintiff's constitutional rights only to the extent that Hill was notified of the incident after the fact and later "signed off" on the violation report.

      c. <u>William Yurcina</u>

The plaintiff alleges that Yurcina, acting in his capacity as Administrator of the Ohio County Correctional Center, was involved in this alleged violation of his constitutional rights only to the extent that Yurcina was notified of the incident after the fact and refused to intervene.

It is clear that defendants Manchin, Hill and Yurcina had no personal involvement with alleged violations of the plaintiff's constitutional rights. To the contrary, the facts as alleged by the plaintiff establish that Tyler is the person who contacted the parole board with the alleged false information which is alleged to have lead to the cancellation of the plaintiff's parole hearing. Governor Manchin, Hill and Yurcina did not become aware of the situation until after it had occurred and after the plaintiff's parole hearing had already been cancelled. In addition, those parties became involved in this case only in their supervisory or official capacities.

In <u>Miltier v. Beorn</u>, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized that supervisory defendants may be liable in under § 1983 only if the plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations."

In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Id.* However, the plaintiff cannot establish supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs. *Id.* Rather, the plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. *Id.*

In this case, the plaintiff has not provided any evidence that defendants Manchin, Hill or Yurcina tacitly authorized or were indifferent to an alleged violation of his constitutional rights. In point of fact, these defendants did not become involved in this situation until after it had occurred. At that time, the plaintiff's parole hearing had already been cancelled and the alleged injury had already been sustained. There was simply nothing these defendants could do at that time.

At best, the plaintiff has established that these defendants should have intervened in the disciplinary report that was written against him by Tyler. Again, however, the plaintiff has asserted nothing more than a claim that these defendants had a responsibility to intervene in their supervisory or official capacities. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. *Id.* at 166. In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. *Id.* (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)). The plaintiff here fails to assert that a policy or custom of the entity played a part in

the alleged violation of his constitutional rights.

Accordingly, the plaintiff cannot maintain this case against defendants Manchin,[5] Hill and Yurcina and those defendants should be dismissed from this action.[6]

**2. Chris Tyler**

The plaintiff asserts that Tyler violated his constitutional rights by calling the parole board and relaying false information for the purpose of causing the plaintiff's parole hearing to be cancelled. The plaintiff asserts that Tyler's actions violate his due process and equal protection rights.

    a. Due Process Rights

The Due Process Clauses of the Fifth and Fourteenth Amendments provide that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. V and XIV, §1. Before it can be determined that the due process clause was violated, it must be determined that a liberty interest was at stake. Sandin v. Connor, 515 U.S. 472 (1995).

It is well-established that a prisoner has no constitutional right in being released to parole before the expiration of a valid sentence. *Id.* at 484; see also Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1 (1979). However, federal courts have recognized due process rights where the state has created a "legitimate claim of entitlement" to some aspect of parole. Vann v. Angelone, 73 F.3d 519, 522 (4th Cir. 1996). State laws create a liberty interest when a statute's

---

[5] In his response to the defendant's motion to dismiss, the plaintiff concedes that Governor Manchin is not a proper defendant in this case. [Dckt. 33, pg. 1 at ¶ 2]

[6] To the extent that the plaintiff complains that the defendants failed to grant him relief during the administrative remedy process, that claim is without merit. An administrator's participation in the administrative remedy process is not the type of personal involvement required to state a claim under § 1983. See Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003).

language "plac[es] substantive limitations on official discretion." Olim v. Wakinekona, 461 U.S. 238, 249 (1983). In West Virginia, an inmate has a right that the board consider him for parole when he is eligible and decide his case in a manner consistent with the criteria set forth in W.Va. Code § 62-12-13. See Rowe v. Whyte, 167 W.Va. 668, 280 S.E.2d 301 (1981). Thus, accepting the plaintiff's statement that he became eligible for parole in May of 2009 as true, he had a liberty interest in being considered for parole by the parole board in August 2009. The question then becomes whether this right was violated by the actions of defendant Tyler.

According to W.Va. Code § 62-12-13(a)(1)(B)(IV), to be eligible for parole, an inmate must "maintain a record of good conduct in prison for a period of at least three months immediately proceeding the date of his or her release on parole." As noted by the respondent, the statute does not require that an inmate be found guilty of a violation to become ineligible for parole. The statute requires only that good conduct be maintained. Nor does the plaintiff dispute that he acted insubordinate or insolent on August 3, 2009. Thus, knowing that the plaintiff had a parole hearing the next day [Dckt. 1, pg. 4 at ¶ 7], and the requirements for parole eligibility [Dckt. 29, Ex. C at ¶ 2], and believing that it was his responsibility to report the plaintiff's misconduct, Tyler reported the plaintiff's misconduct to the parole board. The plaintiff does not dispute Tyler's contention that one of the duties of his employment is to provide the parole board with information pertinent to an inmate's eligibility for parole. *Id.* Accordingly, even reading the facts in the light most favorable to the plaintiff, he has failed to establish that Tyler's call to the parole board was made for any reason other than the performance of his duties. Moreover, the plaintiff does not dispute that Tyler was not the person who actually made the decision to cancel the plaintiff's parole hearing. *Id.* at ¶ 3. That decision was made by the parole board. *Id.*, Ex. H at ¶ 2.

Additionally, the plaintiff does not dispute that he actually called defendant Tyler a derogatory name or cursed at him on August 3, 2009. And, although the plaintiff asserts that he was not charged with a violation prior to the time when Tyler called the parole board, it is clear that the plaintiff was charged with a violation prior to his scheduled parole hearing. The plaintiff's parole hearing was scheduled for August 4, 2009. The undisputed affidavit of Mike Hill states he reviewed the written incident report on August 4, 2009 because he was not on duty on August 3, 2009. [Dckt. 29 at Defs' Ex. G, ¶ 2] The plaintiff concedes this fact. [Dckt. 1 at 4, ¶ 12] Thus, the violation report was clearly written before the plaintiff's scheduled parole hearing and he actually was charged with the disciplinary infraction before that time.

    b. <u>Equal Protection Rights</u>

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, §1. To be successful on an equal protection claim, a plaintiff must demonstrate "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." <u>Morrison v. Garraghty</u>, 239 F. 3d 648, 654 (4th Cir. 2001). If the plaintiff makes such showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.*

Here, even assuming that the plaintiff is similarly situated with the other inmates he has named, he has failed to show that his treatment was a result of intentional or purposeful discrimination. Nor has he shown that he is a member of suspect class. Thus, the plaintiff fails to state an equal protection claim.

**3. <u>Dennis Foreman</u>**

The plaintiff alleges that Foreman, acting in his capacity as the Chairman of the West Virginia Parole Board, was involved in the alleged violations of the plaintiff's constitutional rights only to the extent that Foreman approved the cancellation of the plaintiff's parole hearing after the parole board was contacted by Tyler.

Notwithstanding the plaintiff's failure to allege a violation of his constitutional rights, the plaintiff cannot recover damages from Foreman for decisions made in his official capacity as the Chairman of the West Virginia Parole Board. See Pope v. Chew, 521 F.2d 400, 405 (4th Cir. 1975). In Pope, the Fourth Circuit found that parole board members perform quasi-judicial functions in making parole eligibility determinations and are thus immune from damages under § 1983. *Id.* Foreman's decision to cancel the plaintiff's parole hearing was based on Foreman's determination that an institutional write-up made the plaintiff ineligible for parole consideration on August 4, 2009. [Dckt. 29, Ex. H at ¶ 2] Such decision clearly falls into Foreman's quasi-judicial functions and he is immune from damages in this case.

**B.  The Plaintiff's Conspiracy Claims**

In his response to the defendants' motion, the plaintiff simply asserts that defendants Tyler, Hill and Yurcina conspired against him. However, to establish a civil conspiracy, a plaintiff must prove that two or more persons acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in the plaintiff's deprivation of a constitutional right. Hinkle v. City of Clarksburg, WV, 81 F.3d 416 (4th Cir. 1996). Moreover, the plaintiff has a "weighty burden to establish a civil rights conspiracy." *Id.* at 421. While the plaintiff does not need to "produce direct evidence of a meeting of the minds, [he] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial

objective." *Id.* The plaintiff must produce evidence that at least leads to the inference that the defendants had a mutual agreement to conspire against him, "mere speculation and conjecture will not suffice." Puglise v. Cobb County, 4 F.Supp.2d 1172, 1181 (N.D.Ga. 1998).

It appears that the plaintiff's claim is that the goal of the alleged conspiracy was to manipulate state officials into cancelling his parole hearing. However, the plaintiff has not and cannot show that any one other than defendant Tyler was involved in such a plan. Moreover, the alleged overt act appears to be Tyler's call to the parole board on August 3, 2009, yet neither Hill nor Yurcina became aware of the circumstances of August 3rd until the next day. Therefore, even viewing all of the facts in the light most favorable to the plaintiff, he has failed to establish that two or more persons carried out a preconceived plan or common design. In fact, he provides no evidence which would lead to even an inference that the defendants had an agreement to conspire against him. At best, the plaintiff speculates that Hill and Yurcina covered for Tyler after the fact. Speculation and conjecture, however, are not sufficient to state a claim for conspiracy.

## V. Recommendation

For the reasons stated, the undersigned recommends that the defendants' Motion to Dismiss [Dckt. 28] be construed as a Motion for Summary Judgment and **GRANTED**, and that the plaintiff's complaint [Dckt. 1] be **DISMISSED with prejudice** from the active docket of this Court.

Within **fourteen (14) days** after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the

right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: August 27, 2010.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE